**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRUCE L. JENNINGS,**

        **Plaintiff,**

-vs-                                    Case No.  6:10-cv-530-Orl-31DAB

**ERIC HOLDER, JR., in his capacity as**
**Attorney General of the United States; THE**
**UNITED STATES DEPARTMENT OF**
**JUSTICE; THE UNITED STATES**
**ATTORNEY'S OFFICE FOR THE**
**MIDDLE DISTRICT OF FLORIDA; and A.**
**BRIAN ALBRITTON, in his capacity as**
**United States Attorney for the Middle**
**District of Florida,**

        **Defendants.**
_____/

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 38) filed by the Defendants (henceforth, the "Government") and the response (Doc. 43) filed by the Plaintiff, Bruce Jennings ("Jennings").

**I.**       **Background**

Jennings was the owner and president of B.L. Jennings, Inc., which held a Federal Firearms License ("FFL").  In 1985, he was convicted in state court in California of a misdemeanor charge of assault on his wife.  At that time, 18 U.S.C. § 922(g) prohibited felons from possessing a firearm, but it did not bar people who had been convicted of misdemeanors.  In 1996, however, Congress extended Section 922(g)'s prohibition to include persons convicted of "a misdemeanor

crime of domestic violence" ("MCDV"). *See* 18 U.S.C. § 922(g)(9). Jennings's assault conviction qualified as an MCDV.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") is required to deny an FFL to anyone subject to the prohibitions of 18 U.S.C. § 922(g)(9), or to any company controlled by such a person. 18 U.S.C. § 923(d)(1)(B). In 1999, ATF became aware of Jennings's MCDV and notified him that they were revoking his company's FFL.

Federal law provides an avenue for persons convicted of an MCDV to regain their right to possess a firearm and, by extension, their ability to qualify for an FFL. A person shall not be considered to have been convicted of an MCDV for purposes of 18 U.S.C. § 922(g)(9) if the conviction "has been expunged or set aside . . . unless the [expungement or setting aside] expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii). Shortly after receiving the notice of revocation, Jennings returned to California state court and obtained an order (henceforth, the "1999 Order") purporting to expunge his conviction *nunc pro tunc* to October 18, 1987.[1]

In June 2001, B.L. Jennings, Inc. applied for renewal of the FFL. But in March 2003, ATF determined that the 1999 Order did not bring Jennings within the 18 U.S.C. § 921(a)(33)(B)(ii) exception. As a result, ATF found, Jennings was still prohibited by 18 U.S.C. § 922(9)(g) from possessing a firearm, and the company he controlled still did not qualify for an FFL.

---

[1] According to the Complaint in the instant case, October 18, 1987 was the first date on which Jennings was eligible under the terms of the pertinent statute to have his 1985 conviction expunged. (Doc. 1 at 14).

Jennings sought judicial review of the denial, but it was upheld by a Nevada District Court. On appeal, the United States Court of Appeals for the Ninth Circuit also affirmed the denial. *See Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007). The appellate court found that the 1999 Order had not accomplished an expungement – and therefore the 18 U.S.C. § 921(a)(33)(B)(ii) exception did not apply – because Jennings remained subject to reporting obligations and penalties resulting from the 1985 conviction. *Id.* at 898-99. (In a true expungement, the prior conviction is rendered a legal nullity. *Id.* at 898.)

Returning to California state court, Jennings obtained a modification of the 1999 Order. This modified order again purported to accomplish an expungement of the 1985 conviction, but this time it did so by way of a different California statute than the one utilized in the 1999 Order. The expungement statute utilized in the modified order did not impose the same reporting obligations and penalties as the expungement statute utilized in the 1999 Order. Because of this, Jennings believed he now satisfied the requirements of 18 U.S.C. § 921(a)(33)(B)(ii) and would no longer be considered to have been convicted of an MCDV. In May 2008, armed with the modified order, Jennings sought a declaration that he and his company now qualified for an FFL. *See Jennings v. Mukasey*, 2008 WL 4271348 (M.D.Fla. 2008) (henceforth, the "First Florida Suit"). While the First Florida Suit was pending, the California state court vacated the modified order and reinstated the 1999 Order. This Court granted Jennings's motion to dismiss the First Florida Suit without prejudice so that he could return to California state court and challenge the reinstatement. Ultimately, that challenge was unsuccessful. The 1999 Order remains in place.

On April 8, 2010, Jennings returned to this Court and filed the instant suit. In his complaint, he argues (1) that California's expungement statutes provide different relief to

misdemeanants such as himself depending solely on whether they received probation or not, in violation of his rights to equal protection and due process, as well as his Second Amendment rights; (2) that the Government is violating those same rights by reading the pertinent expungement statute to provide relief to felons but not to persons convicted of a misdemeanor; and (3) that the Government, again in violation of his Second, Fifth, and Fourteenth Amendment rights, has failed to recognize that California law automatically restored his right to possess a firearm 10 years after his misdemeanor conviction.  (Doc. 1 at 16-20).  The Government now seeks dismissal of that complaint on a number of different grounds.

## II.     Analysis

The Government's first argument is that the instant matter is moot, and that Jennings has admitted as much.  When Jennings moved to have the First Florida Suit dismissed, he stated that if he failed to prevail in California, the matter would then become moot, as a matter of law.  It is undisputed that Jennings did not prevail in California.  However, this case has not been mooted.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  If a suit is moot, it cannot present an Article III case or controversy and the federal courts lack jurisdiction to entertain it.  *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004).  In the First Florida Suit, the dispute revolved around Jennings's contention that the modified expungement order had restored his gun rights.  In this suit, although Jennings seeks essentially the same end result, the arguments are different.  In this case, he is arguing that the California expungement statutes are unconstitutional, that the Government is misapplying those statutes to him, and that the Government has failed to recognize that his gun rights were automatically restored ten years after his conviction.  None of those arguments rely on a

determination that the modified expungement order restored Jennings's gun rights. As such, they have not been rendered moot by Jennings's inability to get the modified expungement order reinstated.

The Government next argues that Jennings lacks standing to pursue this case. The constitutional doctrine of standing requires three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The elements of standing are not merely pleading requirements but, rather, are an indispensable part of the plaintiff's case, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at successive stages of litigation. *Id.* at 561, 112 S.Ct. at 2136.

The Government argues that Jennings lacks standing because he has not suffered an injury in fact. More particularly, the Government contends that Jennings is arguing that his Second Amendment rights will be violated at some point in the future, and such a vague threat of future injury is not enough to provide standing.

However, Jennings has asserted more than a vague threat to his Second Amendment rights. In his complaint, Jennings asserts that the Government has threatened to arrest him if he possesses a firearm or returns to work in the firearms industry. The Government does not dispute that this

has occurred. It is also undisputed that Jennings had a long history of employment in the firearms industry and, in the complaint, he has alleged that a particular job in that industry remains open to him if he prevails here. (Doc. 1 at 4). And no reason has been presented for the Court to doubt Jennings' assertion that, but for the Government's threats, he would immediately purchase a gun for his home and would return to the firearms industry. The threat that Jennings would be prosecuted if he did so is far beyond mere conjecture.

The Government also argues that sovereign immunity bars Jennings's claims. The Government made this same argument in the First Florida Suit, and the Court again rejects it. Without reiterating the entire analysis, the Court finds that the conditions exist in this suit as the previous one. Because of the important constitutional issues at stake, this case falls within a very limited exception to the general principle of immunity. *See* Doc. 24 at 4 in Case No. 6:08-cv-833.

Finally, the Government contends that the instant suit is barred by the doctrine of issue preclusion, a doctrine that "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). More particularly, the Government argues that the issue of the purported expungement was litigated when Jennings challenged ATF's denial of his FFL. Because the United States Court of Appeals for the Ninth Circuit has made a determination as to that issue, the argument continues, Jennings cannot relitigate it here.

But the issues that were decided by the Ninth Circuit – at least as those issues have been framed by the Government in this motion – do not appear to be the same issues that have been raised in this suit. The Government argues that the Ninth Circuit (as well as the trial court, and ATF) "heard the same issues regarding whether [the 1999 Order] was sufficient to overcome the

federal disability" and all three concluded that it did not. (Doc. 38 at 19). But in this case, Jennings is not arguing that the 1999 Order restored his Second Amendment rights or his eligibility for a federal firearms license. Rather, Jennings is arguing that California's expungement scheme is unconstitutional, and that the Government is misinterpreting California law. Based on the pleadings, it does not appear issue preclusion bars this suit.[2]

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 38) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 3, 2010.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[2] If anything, the Court's review suggests that Jennings may have a claim preclusion problem, but the Government has raised only issue preclusion in the instant motion.